FILED

APR 2 2 2026

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| | ) | |
| RICHARD LIND, | ) | **4:26CR00185-MAL/PLC** |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges that:

### COUNTS ONE–FIVE
### (Wire Fraud: 18 U.S.C. § 1343)

### I.    Introduction

At all times material to this Indictment, unless otherwise specified below:

1.    C.L. was a third-party logistics company, headquartered in Georgia, that arranged and handled supply-chain functions for a number of businesses, including grocery stores located within the Eastern District of Missouri.

2.    Defendant **RICHARD LIND** ("Lind") was employed by C.L. as a site manager for C.L. at the distribution center for a major grocery store chain ("S") located in the Eastern District of Missouri. C.L. supplied the major grocery store chain with physical labor and heavy equipment for the unloading of semi-truck trailers containing inventory for the grocery stores, as well as software for tracking shipments of inventory.

3.    C.L. used inventory management software called APEX to process shipping and payment records.

4.     In his capacity as site manager, Lind was the highest ranking C.L. employee at the distribution center, and his duties included working with carrier trucking companies to coordinate the delivery of freight to the distribution center, entering shipping and payment records into the APEX system, coordinating with carrier trucking companies regarding invoicing and payments, and making deposits into C.L.'s bank account for payments received from carrier trucking companies.

5.     C.L. classified grocery store inventory deliveries in two ways:

a.     In a "vendor ship load," a carrier trucking company would be hired by the grocery store to deliver a load of goods to the warehouse.   C.L.'s employees would unload the goods at the distribution center and charge the carrier trucking company directly for the unloading. Upon completion of the delivery, Lind, as site manager, would create an invoice for the services and email the invoice to the carrier trucking company for payment.   The carrier trucking company would send back an email containing an authorization code for an electronic payment, which was a common payment method within the trucking industry.   An individual could then present the electronic payment authorization code to participating businesses, which often included truck stops, and negotiate the authorization code for cash.   After paying C.L., the carrier trucking company would pass that cost along to the grocery store by including C.L.'s cost in the carrier's request for payment for the shipped goods.

b.     In a "logistics load," C.L. would coordinate the logistics of the delivery of goods.   When a logistics load was completed, the grocery store paid the fee directly to C.L.

6.     The invoices to carrier trucking companies and electronic payment authorization codes were sent by means of interstate wire transmission.

7.     For both vendor ship loads and logistics loads, the grocery store ultimately paid C.L.'s fees.

8.      If a shipment from a carrier did not arrive, and therefore, C.L. had not provided unloading services for which it could bill the carrier trucking company, Lind had the ability to void the transaction in APEX, which would cause the transaction to appear in APEX as if no payment had been received and no payment was owed.

## II.    The Scheme to Defraud

9.      Beginning by at least as early as September 2022, and continuing through at least March 2024, in the Eastern District of Missouri, and elsewhere, the defendant, **RICHARD LIND**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property from victim grocery store S by means of material false and fraudulent pretenses, representations, and promises, as described further herein.    As part of the scheme and artifice to defraud:

10.     Lind created false records in the APEX system for shipments that had never occurred.

11.     Lind then created false invoices seeking payment from carrier trucking companies for work which C.L. had not performed.

12.     Lind then voided the false record in the APEX system to conceal the false billing from his employer, C.L.    The carrier trucking companies, not realizing the invoices generated by Lind were fraudulent, transmitted electronic payment authorization codes to Lind.

13.     Having unwittingly paid false and fraudulent invoices for work that was never performed by C.L., the carrier trucking companies then sought and obtained reimbursement for those payments from the grocery store.

14.     As a result of the false invoices created by Lind, the grocery store in turn reimbursed the carrier trucking companies for the improper payments made by the carrier trucking companies at Lind's direction.

15.     Lind used the electronic payment authorization codes to obtain cash payments at

3

truck stops located in the Eastern District of Missouri and elsewhere.

16.    As a result of his scheme and artifice, Lind caused over 600 fraudulent payments to be made by carrier trucking companies and thus obtained over $250,000 from his fraud.

## III.    <u>Wire Transmissions</u>

### <u>COUNTS ONE – FIVE</u>

17.    Each of the allegations of Paragraphs 1 through 16 of this Indictment is hereby incorporated by reference as if fully set forth herein.

18.    On or about the following dates, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

### **RICHARD LIND,**

the defendant herein, did knowingly cause to be transmitted by means of interstate wire communication, certain writings, signs, signals, pictures, or sounds, to wit, the following false and fraudulent invoices seeking payment to C.L. from carrier trucking companies:

| Count | Date | Description | Amount |
|---|---|---|---|
| 1 | 9/2/2022 | Order No. 1338700 | $345.00 |
| 2 | 11/28/2023 | Order No. 1668190 | $548.00 |
| 3 | 11/28/2023 | Order No. 1675445 | $530.00 |
| 4 | 2/19/2024 | Order No. 1732205 | $560.00 |
| 5 | 2/27/2024 | Oder No. 1651935 | $608.00 |

All in violation of Title 18, United States Code, Section 1343.

## **FORFEITURE ALLEGATION**

The Grand Jury further alleges there is probable cause that:

1.     Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One – Five, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2.     If any of the property described above, as a result of any act or omission of the defendant:

   a.     cannot be located upon the exercise of due diligence;
   b.     has been transferred or sold to, or deposited with, a third party;
   c.     has been placed beyond the jurisdiction of the court;
   d.     has been substantially diminished in value; or
   e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

Dated: _____                    A TRUE BILL.


                                           _____
                                           FOREPERSON

THOMAS C. ALBUS
United States Attorney


_____
GWENDOLYN E. CARROLL #4657003NY
Assistant United States Attorney

5